**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DEION DAVIS,** ) | |
| ) | **Civil Action No.** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **COMPLAINT** |
| ) | |
| **EASTON COACH COMPANY, LLC,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendant.** ) | |
| ) | **NON-ARBITRATION** |
| ) | |

**PRELIMINARY STATEMENT**

1.      This is an action for damages brought by an individual against Defendant Easton

Coach Company, LLC ("Easton") for violations of the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. §§ 1681, *et seq., as amended*, and the Pennsylvania Unfair Trade Practices and Consumer

Protection Law ("UTPCPL").

**JURISDICTION AND VENUE**

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

4.      Plaintiff Deion Davis is an adult individual who resides in the Commonwealth of

Pennsylvania.

5.      Defendant Easton is a business entity that regularly conducts business in the Eastern

District of Pennsylvania, and which has its headquarters and a principal place of business located

at 926 E. Market Street, Bethlehem, PA 18017.

## FACTUAL ALLEGATIONS

6. In or around May 2025, Plaintiff applied for a job as a driver for Defendant.

7. Defendant maintains certain standards with respect to an employee's driving record and criminal history that must be kept in order for a potential employee to be hired.

8. In order to verify that applicants meet its standards, Defendant contracts with various third-party background check companies to run background checks on employees.

9. In May of 2025, Defendant requested one of these background reports on Plaintiff from HireRight, LLC ("HireRight").

10. When Defendant first requested a report from HireRight, Defendant required Plaintiff to provide fingerprint samples.

11. Plaintiff provided fingerprint samples which were forwarded to HireRight, and HireRight returned a report to Defendant confirming that Plaintiff met Defendant's hiring standards.

12. Defendant received the above background report in or around August 2025.

13. Despite receipt of the background report, along with proof that Plaintiff met Defendant's employment standards, Defendant represented to Plaintiff that it did not have a complete background check available.

14. In response, over the subsequent months, Plaintiff disputed the lack of fingerprint results multiple times with Defendant.

15. In response to each dispute, Defendant falsely stated that there was still an issue with Plaintiff's background report from HireRight.

16.     In response to each dispute, Defendant directed Plaintiff to dispute the contents of the background report with HireRight despite the fact that HireRight had already corrected the report.

17.     Defendant directed Plaintiff to dispute the lack of fingerprint results with HireRight despite knowing that Plaintiff's fingerprint test and subsequent report from HireRight met Defendant's employment standards.

18.     Defendant's responses to Plaintiff informed Plaintiff that he could dispute his HireRight report and correct any inaccuracies by contacting HireRight. However, the suspension is in fact due to Defendant's error in processing HireRight's report, and therefore Plaintiff was not given a legitimate means to dispute the information that supposedly disqualified him from employment with Defendant.

19.     Plaintiff was denied employment with Defendant, and Plaintiff was informed by Defendant that the sole basis the denial was the information on Plaintiff's HireRight consumer report, which Plaintiff disputed as inaccurate.

20.     As a result of Defendant failing to provide Plaintiff with the means to dispute the report which disqualified Plaintiff from working for Defendant, Plaintiff has experienced significant actual damages in the form of denied employment opportunities, financial damages, and emotional distress including embarrassment, stress, humiliation and anxiety.

21.     At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

22.    At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was willful, reckless, negligent, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## COUNT I
### FAIR CREDIT REPORTING ACT ("FCRA")

23.    Plaintiff incorporates the foregoing paragraph as though the same were set forth at length herein.

24.    At all times pertinent hereto, Easton was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

25.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

26.    At all times pertinent hereto, the above-mentioned report prepared by HireRight was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

27.    Pursuant to its usual policies and practices, Easton never provided Plaintiff with adequate pre-adverse action notice before taking adverse action against him.

28.    This practice violates one of the most fundamental protections afforded to employees and potential employees under the FCRA, and also runs counter to longstanding regulatory guidance. The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the

consumer be informed of the negative information in case the report is inaccurate or incomplete." *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

29.     A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate, or discuss the report with the prospective employer before adverse action is taken. *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision is to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken").

30.     Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." *Williams v. Telespectrum, Inc.*, 2006 U.S. Dist. LEXIS 101162, at *18 (E.D. Va. Nov. 7, 2006); *Beverly v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 2266 (E.D. Va. Jan. 11, 2008) (quoting *Williams*). In *Reardon v. Closetmaid Corporation*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees who did not receive a copy of their credit report at least five days before being notified that the employer might take adverse action.

31.     By means of these cases and others construing § 1681b(b)(3)(A), Easton had substantial notice that its conduct violated the FCRA.

32.     Easton negligently and willfully failed to comply with the requirements of 15 U.S.C. § 1681b(b)(3) by failing to provide Plaintiff with any meaningful way to correct the inaccurate information that Easton was supposedly relying on for its decision to deny Plaintiff employment: Easton's pre-adverse action letter did not provide Plaintiff a legitimate means to

argue that he was being denied the job as the result of inaccurate information on his background report.

33.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Easton is liable to Plaintiff for willfully and negligently violating 15 U.S.C. § 1681b(b)(3).

34.    The conduct of Easton is a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Easton is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT I
### PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL")

35.    Plaintiff incorporates the foregoing paragraph as though the same were set forth at length herein.

36.    Easton is a "person" as that term is defined by 73 Pa. Stat. § 201-2(2).

37.    Plaintiff is a "person" as that term is used in 73 Pa. Stat. § 201-2(2).

38.    As detailed above, Easton engaged in "unfair or deceptive acts and practices" as that term is defined by 73 Pa. Stat. § 201-2(4).

39.    Easton, by its acts or omissions described herein, made materially false, misleading oral or written statements or other representations, directly and indirectly through authorized agents and employees, including but not limited to the following:

    a.    Falsely representing to Plaintiff that HireRight's report stated that Plaintiff was ineligible to work for Easton; and

      b.   Falsely representing to Plaintiff that his fingerprints had not been verified, and that Plaintiff was required to provide additional fingerprint samples to a third party.

40.    Easton's acts and omissions detailed herein violate 73 Pa. Stat. § 201-3(a).

41.    Plaintiff suffered an ascertainable loss of money by the conduct of Easton as described herein.

42.    As a business entity, Easton knew or should have known prior to entering into a relationship with Plaintiff the laws governing that relationship.

43.    The routine business practices of Easton, subject to this claim, disregarded the laws governing its relationship with Plaintiff.

44.    No reasonable person would assume that an institution like Easton would violate the laws governing its activities.

45.    Plaintiff justifiably relied on Easton's acts and omissions by believing that sending repeated fingerprint samples to HireRight would cure his allegedly deficient background report, and he continued to follow Easton's directions and instructions as further evidence of that reasonable reliance.

46.    As a result, Plaintiff has suffered significant harm, including financial, actual, and compensatory harm, along with the ascertainable loss described above.

47.    As a result of the above violations of the UTPCPL, Plaintiff has suffered ascertainable losses entitling Plaintiff to an award of statutory and actual damages, and attorney's fees and costs.

## JURY TRIAL DEMAND

48.    Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

(a)    Actual damages;

(b)    Statutory damages;

(c)    Treble damages;

(d)    Punitive damages;

(e)    Costs and reasonable attorney's fees; and

(f)    Such other and further relief as may be necessary, just, and proper.

Respectfully Submitted,

**FRANCIS MAILMAN SOUMILAS, PC**

BY:    _/s/ Mark D. Mailman_
Mark D. Mailman, Esquire
Joseph L. Gentilcore, Esquire
William J. Cooper, Esquire
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
mmailman@consumerlawfirm.com
jgentilcore@consumerlawfirm.com
wcooper@consumerlawfirm.com

*Attorneys for Plaintiff*

Dated: July 23, 2026

8